**Johnny A. JOHNSON, Jr.,**
**Plaintiff–Appellant,**

v.

**SAINT FRANCIS HOSPITAL, INC.,**
**Defendant–Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

June 3, 1988.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 6, 1988.

Kathryn M. Swisher, Memphis, for plaintiff-appellant.

Jeff Weintraub, Memphis, for defendant-appellee.

CRAWFORD, Judge.

This is a retaliatory discharge case. After a jury verdict for plaintiff, Johnny A. Johnson, Jr., awarding compensatory and punitive damages, defendant, St. Francis Hospital, Inc., filed a motion for a judgment notwithstanding the verdict, for directed verdict and in the alternative for a new trial. From the trial court's order granting defendant a directed verdict and conditionally a new trial, plaintiff appeals.

Plaintiff's amended complaint filed October 2, 1985, alleges that plaintiff, while employed by defendant, sustained a back injury on May 2, 1984, covered by the Tennessee Workers Compensation Law. He alleges that because of the injury, he was temporarily totally disabled for 159 weeks, underwent disc surgery and sustained a fifteen percent permanent partial disability

to the right upper extremity. Plaintiff avers that after returning to work from this injury, he sustained another injury on October 19, 1984, which was also covered by the workers compensation law, and a lawsuit for this claim is presently pending. Plaintiff alleges that defendant discharged him from his employment because he had made the two workers compensation claims.

Defendant's answer joins issue on all of the material allegations of the complaint, specifically denying that plaintiff was discharged because of the workers compensation claims, and avers that plaintiff was discharged because he was unavailable for work.

Plaintiff was hired in October of 1979 as store room manager and his duties included, among other things, supervision of the store room personnel in the storing and distributing of supplies and equipment used in the hospital. Although the testimony conflicts as to the maximum lifting required in plaintiff's job, it is uncontradicted that he is required on occasion to lift up to 55 pounds in performing his duties.

Plaintiff testified that he sustained a back injury in May of 1984, and filed a complaint for workers compensation against the hospital on October 17, 1984. He returned to work from the May injury shortly before filing the October lawsuit, after having undergone back surgery. He sustained another injury, while at work, on October 19, 1984, which resulted in his missing additional time from work and undergoing further medical treatment. Plaintiff reported again for work on November 8, 1984, and presented to Jean Shelton, the employee health nurse, a certificate from his physician, Dr. Snyder, certifying that he could return to work, but was restricted to lifting 20 pounds or less. Plaintiff testified that later that day he was called to a meeting in the personnel director's office and was informed that he could not return to work because of the lifting restriction. This meeting was attended by the personnel director, Robert Halford, Chief Security Officer Richard Hunt, and the employee

health service nurse, Jean Shelton. The plaintiff testified that he explained to Halford how the second accident had happened and that Halford responded, "I don't see how it could have happened and I don't think that it really did." Plaintiff also stated that Halford said in the meeting that he knew that plaintiff had filed a workers compensation claim and he wanted plaintiff to go back to his doctor, Dr. Snyder. Plaintiff alleges that Halford told him they would talk about him going back to work, although Halford said, "But I doubt that you will ever work here again."

By memorandum of November 12, 1984, defendant's employee sent to Dr. Snyder a copy of plaintiff's job description for the doctor to review before deciding if plaintiff could return to work without restriction. Apparently, this request was never answered by Dr. Snyder, although the record reveals that Dr. Snyder's file contained the memorandum with a notation thereon dated January 7, 1985, made by Dr. Snyder's secretary, Linda Dixon, which stated "that he can return to normal duties." There is no proof in the record that this information was conveyed to defendant.

A copy of the leave of absence policy in effect at the hospital was introduced in evidence, and provides for the granting of a six month leave of absence to employees under certain circumstances. Leave of absence protects the employees' accrued service record and benefits and the employee is accorded the privilege of returning to employment if a job is available within a six month period. The policy specifically provides:

> ... employees who receive worker's compensation benefits for 90 days will be taken off the active payroll and be terminated or be place [sic] on leave of absence not to exceed one year from date of injury.

Robert Halford, personnel director for defendant, testified that pursuant to the leave of absence policy he wrote a letter to the plaintiff dated January 23, 1985, a copy of which was introduced in evidence and which states:

On October 19, 1984, you were injured at St. Francis Hospital and have been unable to return to work since that date. The latest communication from your doctor indicates that you might remain off for an indefinite period of time. Since the period of time that you are unable to work is indefinite, I am requesting that you apply for a six months leave of absence. If you would like to apply for long term disability, contact Jane Cherry in the Personnel Department.

It is not my desire to effect your termination and I urge you to consider this request that you apply for a leave of absence. If I have not heard from you in five (5) days I will be obligated to terminate you.

I do hope that you continue to progress. If you have any questions, please do not hesitate to contact me.

Plaintiff replied to this letter by letter dated January 28, 1985, entered in evidence, which states:

In response to your letter of January 23, 1985 in which you requested that I apply for a six months leave of absence or apply for long term disability, I wish to state that there is no need for either. You stated that the latest communication from my doctor indicates that I might remain off for an indefinite period of time. I do not know the date of your communication from him, but on January 22, 1985 I went to the doctor and he said I would be able to return to work by the last of February with no restrictions as to limits of lifting. As you should recall, in October, after the second injury and prior to the second surgery for the second injury, I tried to return to work and you refused to let me as the doctor imposed some restrictions on how much I could lift. The doctor naturally felt when I last saw him in January that it would do no good to let me go back before the end of February as he still felt that limits on lifting would apply until that time. He stated the normal recovery period for this type surgery is three

months, which will be up the last of February.

I spoke with you on the phone today and you said the six months leave would be without pay and there would be no guarantee that I would have a job at all at the end of the six months, much less the job I now hold.

I do not feel that I need a six months [sic] leave of absence nor long term disability, [sic] I also feel you are being very unfair in terminating my employment for the reason stated. I have a good work record, the injury was work related and the recuperation period has not been longer than is ordinary.

I hope you will reconsider your intention to terminate my employment and allow me to return to work the last of February.

Halford testified that upon plaintiff's refusal to take the leave of absence as provided by the rules, he was terminated for the stated reason "unavailable for work."

Halford further testified that the reason they held the meeting in November of 1984 was to discuss the lifting restriction and to reassure the plaintiff that he was entitled to the benefits provided by workers compensation. He denied making the statements attributed to him by plaintiff and he asserts that he did not want to terminate plaintiff's employment, but had no choice under the policies in effect when plaintiff refused to seek a leave of absence.

The first issue for review is whether the trial court erred in granting a directed verdict to the defendant.

In *Holmes v. Wilson*, 551 S.W.2d 682 (Tenn.1977), the Court said:

A post-trial motion for the entry of judgment in accordance with a motion for a directed verdict made during the trial must be gauged by the usual rules relating to directed verdicts. Those rules require that the trial judge, and the appellate courts, take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable

inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion. *Vaughan v. Shelton*, 514 S.W.2d 870 (Tenn.App.1974); *Keller v. East Tennessee Production Credit Ass'n*, 501 S.W.2d 810 (Tenn.App.1973). See also *Silverii v. Kramer*, 314 F.2d 407 (3rd Cir.1963).

*Id.* at 685.

◾ Plaintiff was an employee at will and could be discharged from his employment without cause, but he cannot, however, be discharged for exercising his statutory right to workers compensation benefits for work related injury. *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441, 445 (Tenn.1984).

Counsel have not cited, nor has our research revealed a Tennessee case dealing with the evidence required to prove a prima facie case of retaliatory discharge. There are cases from other jurisdictions which can give us some guidance.

In *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273 (Mo.1984), the Court considered the evidence necessary for a prima facie case under the Missouri statute prohibiting retaliatory discharge and stated:

> The action authorized by this statute has four elements: (1) plaintiff's status as employee of defendant before injury, (2) plaintiff's exercise of a right granted by Chapter 287, (3) employer's discharge or discrimination against plaintiff, and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions. *See Davis v. Richmond Special Road District*, 649 S.W.2d 252 (Mo.App. 1983); *Mitchell v. St. Louis County*, 575 S.W.2d 813 (Mo.App.1978).

*Id.* at 275.

In *Slover v. Brown*, 140 Ill.App.3d 618, 94 Ill.Dec. 856, 488 N.E.2d 1103 (5 Dist.

1986), an employee brought suit against his former employee alleging that he had been fired for filing a workers compensation claim. The court, in holding that there was no retaliatory discharge, stated:

> It has been held that the elements of retaliatory discharge are as follows: (1) plaintiff's status as an employee of defendant before injury; (2) plaintiff's exercise of a right granted by the Act; (3) employee's discharge causally related to the filing a claim under the Act. *Causality does not exist if the basis for the discharge is valid and nonprotectual.* Thus, an employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury. In this case, the court specifically found that defendant had not discriminated against the plaintiff because he filed a claim under the Act; that finding is well supported by this record. (Citations omitted).

*Id.* at 620–21, 94 Ill.Dec. at 858, 488 N.E.2d at 1105. (Emphasis added).

Once an employee has met its burden of establishing a causal link between the discharge and the claim for workers compensation benefits, the employer must rebut the alleged discrimination by showing a legitimate reason for the discharge. *Elzey v. Forrest*, 739 P.2d 999, 1003 (Okla.1987); *see also* 32 A.L.R.4th 1221.

◾ The proof in this record establishes that plaintiff returned to work after his first injury involving a workers compensation claim. He then sustained a second injury covered by workers compensation. After this second injury, he attempted to return to work with a certificate from his doctor containing a lifting restriction, and because of the nature of his duties, defendant did not allow his return to work with this restriction. It is significant that at this point, defendant made further inquiry with plaintiff's doctor to see if and when plaintiff could return to work without the lifting restriction. In our opinion, this is persuasive evidence to negate any motive for retaliation against the plaintiff.

Furthermore, there is absolutely no dispute that defendant's leave of absence policy as heretofore set out was in existence prior to plaintiff's injuries. It is clearly established that plaintiff was urged by defendant's personnel director to avail himself of the leave of absence policy, rather than to accept termination. Plaintiff voluntarily made his choice not to apply for a leave of absence, but instead remained "unavailable for work" pursuant to defendant's rules. The evidence is without dispute that plaintiff's termination resulted from his unavailability for work and that he could have, within defendant's personnel guidelines, averted discharge by applying for a leave of absence.

There simply is no proof in this record that plaintiff was discharged for making a workers compensation claim. Accordingly, the order of the trial court directing a verdict for the defendant is affirmed, and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against the appellant.

HIGHERS and FARMER, JJ., concur.