12 F.3d 211
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tonya BURKS, Plaintiff-Appellant,
v.
PROCTER & GAMBLE MANUFACTURING COMPANY, Defendant-Appellee.
 No. 92-6634.
 United States Court of Appeals, Sixth Circuit.
 Nov. 10, 1993.
 
 Before: MARTIN and BOGGS, Circuit Judges; and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Tonya Burks appeals the district court's granting of summary judgment to defendant Procter & Gamble Manufacturing Co. in this diversity suit alleging discharge in retaliation for having sought workers' compensation benefits after being injured on the job. We affirm.
 
 
 2
 * Burks was hired in October 1989 as a slide technician and was later promoted to shipping technician, a position consisting of operating forklifts, clamp trucks, and pull packs. On January 24, 1991, she injured her back during the course of her job. She was taken off work pursuant to doctor's orders and began receiving temporary workers' compensation benefits shortly thereafter.
 
 
 3
 In response to P & G's inquiry of July 18, 1991, as to when Burks would reach maximum medical improvement, Dr. Roger Cicala, Burks's primary treating physician, informed P & G on July 23 that she had reached her maximum medical improvement but would be unable to perform her former job, due to restrictions on her body movement. Burks had not returned to work and continued to receive temporary workers' compensation benefits at the time.
 
 
 4
 On August 19, 1991, Burks filed a complaint in state court for permanent workers' compensation benefits.[1] P & G was served with the complaint on August 27. On August 29, P & G's insurance administrator advised Burks that her temporary workers' compensation benefits would be terminated effective August 31, 1991, because she had reached maximum medical recovery.
 
 
 5
 On September 11, 1991, Burks contacted Gail Thompson, the P & G employee in charge of handling workers' compensation benefits. Thompson confirmed that her benefits had been cancelled. According to Burks's deposition, she asked Thompson if P & G had found a job for her; Thompson replied that there was no job for her. Burks responded, "Well, what am I supposed to do. Y'all have cut off my medical benefits through workmen's comp. My workmen's comp check's being cut off. You tell me you don't have a job for me. You know, I don't have any money coming in." Thompson allegedly replied, "Well, you should have thought about that before you filed a lawsuit."
 
 
 6
 On September 20, 1991, Burks went to see Terry Poteet, P & G's personnel manager. Burks told him that she had talked to Thompson, that Thompson had told her that P & G had no job for her, that her money and benefits had been cut off, that she had to have a job, and that she was there to work. Poteet replied, "Well, there's no job for you." She told him that she could do clerical work, but he repeated that there was no job for her. She then asked him what she was to do, since her benefits had been cut off, she had no money, and P & G had no job for her. Poteet allegedly replied, "Well, you should have thought about that before you brought this under litigation." P & G denies that Poteet and Thompson made these statements.
 
 
 7
 On September 25, 1991, Poteet circulated a "File Memo" asking the plant's operation managers if there were any positions available in their departments for Burks, given her medical restrictions. All the operation managers responded that there were no positions for her. During discovery, P & G furnished Burks with a computerized list of job transfers during this same time period, indicating several transfers from the shipping department (in which plaintiff worked) to the personnel and finance departments. Burks asserts that these positions are clerical in nature, that her background qualifies her to do clerical work, and that she and her treating physician informed P & G that she could do clerical work.
 
 
 8
 On September 30, 1991, Poteet wrote Burks that her employment with P & G had been terminated, effective August 31, 1991. P & G says that the effective date was back-dated in order to allow Burks to receive unemployment compensation benefits from the earliest possible date.
 
 
 9
 P & G's brochure summarizing company benefits described its discharge and disability policies: All employees terminated would be given two weeks notice or two weeks base salary; injured employees would be assigned work they could do if such work was available. The brochure also contained a disclaimer that the policies therein were not binding. The disclaimer is at the end of the brochure but is in the same font and size as the rest of the brochure's text.
 
 
 10
 Burks filed her suit for retaliatory discharge in a Tennessee state court; P & G had the action removed to federal court on the basis of diversity jurisdiction. The district court granted summary judgment to P & G, reasoning that Burks had failed to make out a prima facie case of retaliatory discharge under Tennessee state law because she was unable to show an exclusive causal relationship between the exercise of her rights and her discharge (principally because she admits being unable to perform her job of shipping technician). The court also stated that P & G's failure to provide Burks alternative employment did not constitute retaliatory discharge under Tennessee state law. Burks appeals to this court.
 
 II
 
 11
 This court reviews de novo the district court's grant of P & G's motion for summary judgment. Baggs v. Eagle-Picher Industries, Inc., 957 F.2d 268, 271 (6th Cir.), cert. denied, 113 S.Ct. 466 (1992). This court must affirm the district court only if it determines that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When evaluating this appeal, this court must view the evidence in the light most favorable to the non-moving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).
 
 
 12
 The moving party need not support its motion with evidence disproving the nonmoving party's claim, but must only " 'show[ ]'--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case. Id. at 322, 106 S.Ct. at 2552. The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present "evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986). "The 'mere possibility' of a factual dispute is not enough." Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992) ( quoting Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir.1986)).[2]
 
 
 13
 The Tennessee Supreme Court recently articulated the contours of Tennessee law regarding claims of retaliatory discharge for claiming workers' compensation benefits. In order to establish a cause of action for discharge in retaliation for asserting a workers' compensation claim, a plaintiff must show (1) that she was an employee of the defendant at the time of the injury; (2) that she made a claim against the defendant for workers' compensation benefits; (3) that the defendant terminated her employment; and (4) that the claim for workers' compensation benefits was "a substantial factor" in the employer's motivation to terminate the employee's employment. Anderson v. Standard Register Co., 857 S.W.2d 555, 558-59 (Tenn.1993).[3] Proof of a causal link between the claim for benefits and the discharge imposes upon the employer the burden of showing a legitimate, nonpretextual reason for the discharge. Ibid.
 
 
 14
 We conclude that Burks has not presented a genuine issue of material fact for trial and that P & G is entitled to judgment as a matter of law. While the district court applied the stricter "exclusive causal relationship" test of Johnson v. Saint Francis Hospital, Inc., 759 S.W.2d 925 (Tenn.App.1988), Burks would still be unable to establish her claim of retaliatory discharge under the less burdensome "substantial motivating factor" test of Anderson.
 
 
 15
 Undeniably, Burks satisfies the first three criteria of the Anderson test. However, she fails to establish the fourth element. Burks asserts that the sequence of events--the termination of her temporary benefits and of her employment following her filing for permanent workers' compensation benefits--and the statements of Poteet and Thompson establish the causal link between her benefits claim and her discharge. The mere timing of the events, however, does not establish causality. Further, P & G has offered a legitimate, nonpretextual reason for her discharge: because of her medical restrictions, Burks was physically unable to perform her job of shipping technician. Burks denies neither the restrictions nor her inability to perform the job of shipping technician. There may be a factual dispute as to the statements of Poteet and Thompson, but even if the statements were made, they simply do not rebut P & G's legitimate, nonpretextual reason for discharging Burks. See Leatherwood v. United Parcel Service, 708 S.W.2d 396 (Tenn.App.1985) (summary judgment for defendant in retaliatory discharge case because employer's failure to provide alternative employment to partially disabled employee does not constitute retaliatory discharge).
 
 
 16
 Burks argues that pretext is indicated by P & G's alleged failure to follow the policies set forth in its brochure. The brochure, however, is declared to be non-binding. Even if it were to impose binding obligations on P & G, the handbook would still not establish that the reason for Burks's firing was a pretext. P & G notified Burks by letter of September 30 that her termination was effective August 31, seemingly contravening the brochure's two-week notice provision. However, P & G back-dated the effective date in order to enable Burks to be eligible to receive unemployment compensation from the earliest possible date. The back-dating of the letter thus does not establish that P & G's reason was pretextual. Burks also contends that P & G's failure to assign her a job in the personnel or finance departments, to which some workers were transferred, violates its disability policy. However, the record does not indicate the nature of the jobs involved in the transfers. Even if she were qualified for a clerical position, Burks has not established that there was work she could do in these, or any other, departments.
 
 
 17
 Thus, because Burks cannot demonstrate a causal link between the filing of her workers' compensation claim and her subsequent discharge, and because she further cannot show that P & G's proffered reason for terminating her was pretextual, the district court properly granted summary judgment to P & G.
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The period of temporary disability, for which temporary benefits may be received, terminates at the point at which maximum recovery is reached. At that point, permanent disability commences, for which permanent benefits may be received
 
 
 [2]
 Burks argues that Tennessee law controls the standard of review for summary judgment motions and asserts that she need only "offer evidence which contradicts the evidence offered by the defendant" to preclude the granting of summary judgment to P & G. Rule 56.03 of the Tennessee Rules of Civil Procedure and the cases construing it, however, speak of material facts, not just any facts. See Byrd v. Hall, 847 S.W.2d 208 (Tenn.1993) (setting forth standards for summary judgment disposition)
 
 
 [3]
 Thus, the parties' disagreement in their briefs as to whether the fourth element requires a showing of an "exclusive causal relationship" (as required by Johnson v. Saint Francis Hosp., Inc., 759 S.W.2d 925 (Tenn.App.1988) or the less burdensome "substantial motivating factor" (as adopted in Sasser v. Averitt Express, Inc., 839 S.W.2d 422 (Tenn.App.1992)) is now irrelevant. The Tennessee Supreme Court has adopted the "substantial motivating factor" test