| | | |
|---|---|---|
| MITCHELL L. DARNALL, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal No. |
| | ) | 01-A-01-9807-CV-00347 |
| v. | ) | |
| | ) | Williamson Circuit |
| A + HOMECARE, INC. and | ) | No. I-95381 |
| JAMES D. SMITH, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

**FILED**

**June 2, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

## COURT OF APPEALS OF TENNESSEE

### APPEAL FROM THE CIRCUIT COURT FOR
WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

### THE HONORABLE CORNELIA A. CLARK, JUDGE

STANLEY M. CHERNAU
Suntrust Center, Suite 1750
424 Church Street
Nashville, Tennessee 37219
        ATTORNEY FOR PLAINTIFF/APPELLANT

ROBERT E. BOSTON
511 Union Street, Suite 2100
Nashville, Tennessee 37219
        ATTORNEY FOR DEFENDANTS/APPELLEES

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# OPINION

This is an appeal by the plaintiff from summary judgment granted to the Defendants in a complaint asserting retaliatory discharge with the action based solely upon Tennessee Code Annotated section 50-1-304.

I.      THE FACTS OF THE CASE

Plaintiff was employed by A+ Homecare, Inc. on September 6, 1994 to be its Director of Finance. He was hired as an "at will" employee. A+ Homecare, Inc., through its agencies, provides home health services to individuals throughout the Middle Tennessee area. A+ Homecare, Inc. had a written policy prohibiting sexual harassment in the work place which policy was known to Mitchell Darnall. In late October 1994, one of Darnall's female co-workers complained to A+ supervisory personnel that Darnall had made inappropriate, unwelcome, sexually graphic comments to her of a personal nature that made her very uncomfortable. This employee, Diana Rollinson, made her complaints to Cindi Smith, Vice President of Human Resources at A+. After reporting the problem to Rhea Garrett, General Counsel for A+, Cindi Smith informed Darnall of the complaint asserted by Ms. Rollinson.

Darnall's response to A+'s motion for summary judgment reads in pertinent part, as follows:

### DEFENDANT'S ALLEGED UNDISPUTED FACT - NUMBER 3

In late October, 1994, one of Darnall's female co-workers complained to A+'s supervisory personnel that Darnall had engaged in inappropriate behavior which, apparently to the employee and certainly to A+, was deemed to constitute sexual harassment. Garrett aff. at ¶¶ 2-3. That employee, Diana Rollinson, complained that Darnall had made inappropriate, unwelcome sexually graphic comments to her, of a very personal nature, that made her very uncomfortable.[2] ...

[2] Specifically, Ms. Rollinson reported that, while the two were alone at A+'s offices one evening, Darnall told her that he had learned at Lamaze class that his pregnant wife's labor could be quickened with ejaculation of semen and massaging of the breasts. Garrett Aff at ¶ 2.

## PLAINTIFF'S RESPONSE

The only true reproach by anyone at Defendant A+, until the date of termination, was a statement by Ms. Cindi Smith, Vice President of Human Resources, that Plaintiff had possibly offended Ms. Dianna Rollinson with a comment regarding his wife's pregnancy in late October 1994. At that time, Plaintiff could not recall any questionable statements made, and Ms. Smith did not know the specifics. Plaintiff later realized it occurred at a staff meeting on a Monday following a Lamaze class he attended with his pregnant wife. During the staff meeting, he was asked many questions by his staff. Plaintiff answered their questions concerning the class because the staff members appeared to be genuinely interested. Apparently, the statement was made by Plaintiff while answering their questions. At no point did Plaintiff acknowledge that any conversation had gotten out of hand. Ms. Smith maintained that the statement was simply an unintentional misunderstanding and definitely was not a problem. Further, it would not be reported in his personnel file. He apologized to Ms. Rollinson. No further complaints were made known to Plaintiff until termination. ...

Shortly after he began his employment with A+, Darnall became concerned about the accounting practices of the corporation. Particularly he found that a check in the amount of $30,000 had been drawn on the general operating account of A+ on June 1, 1993, payable to the Defendant James Bradley Smith, with no supporting documentation. Darnall questioned Brad Smith and received four differing explanations for the $30,000 check. First, that it was a part of the proceeds of the sale of a previous company to A+; second, it was a loan payback for money previously loaned by Smith to A+; third, that it was compensation to him over and above what Medicare would allow and that he did not want to report it to Medicare or the IRS, and fourthly, that it was a loan to him by A+ for which he had documentation at home. Not being satisfied with these explanations, Darnall went to the outside auditors of the company to discuss the problem with them. On January 20, 1995, one day after his meeting with the auditors, Darnall was terminated.

II.     TENNESSEE CODE ANNOTATED SECTION 50-1-304

(Public Protection Act)

At common law Tennessee recognized the "employee-at-will" rule which provides that employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause. *Combs v. Standard Oil Co.*, 166 Tenn. 88, 59 S.W.2d 525 (1933).

In sustaining the common law rule this court has said:

> The rule has been well established in this state that a contract of employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause. *Graves v. Anchor Wire Corp. of Tennessee*, 692 S.W.2d 420 (Tenn.App.1985). In *Payne v. Western & Atlantic Railroad Co.*, 81 Tenn. 507 (1884), the Supreme Court said:
>> All may dismiss their employees at will, be they many or few, for good cause, for no cause or even for cause morally wrong without being thereby guilty of legal wrong.

*Randolph v. Dominion Bank*, 826 S.W.2d 477, 478 (Tenn. App. 1991).

This principle is still viable in Tennessee except where modified by statute. *Whitaker v. Care-Moore, Inc.*, 621 S.W.2d 395 (Tenn. App. 1981).

Tennessee Code Annotated section 50-1-304 is a narrowly crafted statutory exception to the common law "employee-at-will" rule.

> Tennessee Code Annotated section 50-1-304 provides in pertinent part:
>
> (a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.
>
> * * *
>
> (c)   As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.
>
> (d)  any employee terminated in violation of subsection (a) shall have a cause of action against the employer for

retaliatory discharge and any other damages to which the employee may be entitled.

The historical background for this statute and our limited experience under it has been addressed by the United States District Court for the Eastern District of Tennessee:

> This statutory cause of action, enacted in 1990, embodies a common law cause of action previously considered by the Tennessee Supreme Court in *Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 544 (Tenn.1989) (recognizing "a cause of action for retaliatory discharge . . . when an at-will employee is terminated solely for refusing to participate, or remain silent about illegal activities") and in *Chism v. Mid-South Milling Co., Inc.*, 762 S.W.2d 552, 555-57 (Tenn.1988) (recognizing the cause of action, though not on the facts of the case).
>
> However, both cases hesitated to fully validate the cause of action. The *Watson* court expressed its reluctance "to establish public policy or adopt an exception to the common law by placing [its] imprimatur thereon in the absence of some constitutional or legislative precedent." *Watson*, 789 S.W.2d at 544. The *Chism* court emphasized resting the cause of action upon public policy clearly "evidenced by an unambiguous constitutional, statutory or regulatory provision." *Chism*, 762 S.W.2d at 556. Public policy guidance is necessary because at the heart of the law of retaliatory discharge is the balance between the employer's undeniable right to terminate an at-will employee over management and policy decisions and the employee's right to protection from unlawful discharge. *Id.* at 555; *Watson*, 789 S.W.2d at 540; *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 445 (Tenn.1984).
>
> As noted above, the Tennessee General Assembly enacted the Act in 1990, thereby satisfying the Tennessee Supreme Court's concern for clear public policy guidance. The statute's language nearly adopts verbatim the language found in the earlier cases. Recent cases specifically addressing *Tenn. Code Ann.* § 50-1-304, though, are very few in number.

*Griggs v. Coca-Cola Employees' Credit Union*, 909 F.Supp. 1059, 1063 (E.D. Tenn. 1995).

In order to get to the heart of the issue in this case, it is necessary to clearly establish the distinction between retaliatory discharge under other

statutory and common law exceptions to the employee-at-will doctrine and the very limited statutory exception thereto established by Tennessee Code Annotated section 50-1-304. In *Johnson v. St. Francis Hosp., Inc.*, 759 S.W.2d 925 (Tenn. App. 1998), the Western Section of the Court of Appeals was dealing with a retaliatory discharge for filing a workers compensation claim. Relying on *Hansome v. North Western Cooperage Co.*, 679 S.W.2d 273 (Mo. 1984), the court asserted four elements to establish a prima facie case of retaliatory discharge, to-wit:

1. Plaintiff's status as an employee of the defendant before injury.

2. Plaintiff's exercise of his right to seek workers compensation.

3. Employer's discharge of or discrimination against Plaintiff.

4. An exclusive causal relationship between Plaintiff's actions and Defendant's actions.

In the context of a retaliatory discharge for workers compensation related activities, this court questioned the correctness of the fourth factor set forth in *Johnson* and the Supreme Court granted an appeal to reconcile the factors needed for a prima facie case of retaliatory discharge in a workers' compensation context. The Supreme Court held:

> Based on the principles stated in *Clanton v. Cain-Sloan Co., Chism v. Mid-South Milling Co., Inc.* and *Johnson v. Saint Francis Hosp., Inc.,* the following elements are found to establish a cause of action for discharge in retaliation for asserting a workers' compensation claim: (1) The plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment.

*Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993).

*Johnson v. St. Francis Hosp., Inc.*, 759 S.W.2d 925 (Tenn. App. 1988) dealt with workers' compensation retaliatory discharge and was decided two years before the enactment of Tennessee Code Annotated section 50-1-304. The first case dealing specifically with this "whistle blower" statute was *Merryman*

*v. Central Parking System, Inc., et al*, No. 01A01-9203-CH-00076, 1992 WL 330404, (Tenn. App. Nov. 13, 1992). It was decided after the decision of this court in *Anderson v. Standard Register Co.*, 1992 WL 63421 (Tenn. Ct. App. April 1, 1992), but before the Supreme Court issued its opinion on appeal. *Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn. June 28, 1993). *Merryman* adopted the four factors of *Johnson v. St. Francis Hosp., Inc.*, including the "exclusive causal relationship" factor without making clear that this "exclusive causal relationship" factor is mandated by the particular language of Tennessee Code Annotated section 50-1-304, rather than by *Johnson v. St. Francis Hosp., Inc.* This fourth factor of *Johnson* did not survive *Anderson v. Standard Register Co.*, but was rather converted therein to a "substantial factor" test in worker compensation related retaliatory discharge.

It results that the four factor test set forth in *Johnson v. St. Francis Hosp., Inc.*, 759 S.W.2d 925, 928 (Tenn. App. 1988) is the correct test only because Tennessee Code Annotated section 50-1-304(a) provides that "no employee shall be discharged or terminated <u>solely</u> for refusing to participate in, or for refusing to remain silent, about illegal activities." (emphasis added)

Thus considering this case in the limited context of Tennessee Code Annotated section 50-1-304 and not in the context of retaliatory discharge in general, the four factor *Johnson* test is valid.

The limited number of cases actually addressing Tennessee Code Annotated section 50-1-304 indicate that the plaintiff has indeed a formidable burden in establishing elements number two and four of the cause of action. *Griggs v. Coca-Cola Employees' Credit Union*, 909 F.Supp. 1059, 1063; *Merryman v. Central Parking System, Inc.*, No. 01A01-9203-CH-00076 1992 WL 330404 and *Leeman v. Edwards*, No. 01A01-9401-CV-00050 1994 WL 560889 (Tenn. App. Oct. 14, 1994) (both overruled on other grounds).

III.     SUMMARY JUDGMENT

The often repeated rules governing summary judgment are outlined in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). The evidence must be taken by the

trial court and by this court in the light most favorable to the plaintiff as the nonmoving party and all reasonable inferences from the facts of the case must be construed in favor of Darnall.

The four elements of a cause of action under Tennessee Code Annotated section 50-1-304 are:

(1)     The plaintiff's status as an employee of the Defendant;

(2)     The plaintiff's refusal to participate in, or to remain silent about, illegal activities;

(3)     The employer's discharge of the employee; and

(4)     An exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee. *Griggs v. Coca-Cola Employees' Credit Union*, 909 F.Supp. 1059, 1063 (E.D. Tenn. 1995).

Elements (1) and (3) are clearly met in this case. There is enough evidence in the record as held by the trial judge to preclude summary judgment as to element number (2).

It is the inability of the plaintiff to establish the "exclusive causal relationship" between his alleged "whistle blower" activities and his termination by A+ that dooms his case. The persistent inquiries by Darnall into activities predating his employment with A+ and his conference with the outside auditors the day before his termination may have been the main reason for his discharge and probably were at least a substantial part of the reason for his discharge. However, this substantial factor rationale will not avoid summary judgment.

In analyzing the causation element necessary to sustain an action under Tennessee Code Annotated section 50-1-304, the United States District Court for the Eastern District of Tennessee held:

> The fourth element requires Griggs to demonstrate "an exclusive causal relationship between the plaintiff's refusal to participate in or to remain silent about illegal activities and the employer's termination of the employee." *Merryman*, 1992 WL

330404, at p. *6; *Leeman*, 1994 WL 560889, at p. *2. The pertinent language of *Tenn.Code Ann.* § 50-1-304(a) (emphasis added) reads: "No employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities." Griggs invites the Court to read the statute and the language from *Merryman* as intending the employer's unlawful behavior to only have been a "substantial" factor in the discharge (Court File No. 11, pp. 10-14). The Court declines to do so.

The rule of statutory construction requires the Court to yield to the legislature's intention. *Business Brokerage Centre v. Dixon*, 874 S.W.2d 1, 5 (Tenn.1994); *City of Blaine v. John Coleman Hayes,* 818 S.W.2d 33, 37 (Tenn.App.1991) (citations omitted); *Lockhart v. Jackson-Madison Cty. Gnl. Hosp.*, 793 S.W.2d 943, 945 (Tenn.App.1990) (citations omitted); *see also First Am. Nat. Bank-Eastern v. F.D.I.C.,* 782 F.2d 633, 636-37 (6th Cir.1986). In order to give effect to the legislature's intent, courts look primarily to "the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language." *City of Blaine*, 818 S.W.2d at 37 (citations omitted).

Here, the language is clear. An employer may not discharge an employee "solely for refusing to participate in, or for refusing to remain silent about, illegal activities." *Tenn. Code Ann.* § 50-1-304(a). Nothing in the remainder of the section indicates the Court should read the statute differently. Nothing in *Merryman* and *Leeman*, the only two cases directly addressing the statute, indicate the Court should read the statute differently.

*Griggs v. Coca-Cola Employees' Credit Union*, 909 F.Supp. 1059, 1065 (E.D. Tenn. 1995).

This court, in discussing Tennessee Code Annotated section 50-1-304, has stated:

Prior to the passage of T.C.A. § 50-1-304, the appellate courts had not clearly settled on whether a plaintiff was required to show that protected activity was either a substantial factor or the sole cause of termination. But the statute supplied the answer; it clearly requires the employee to show that the *sole* cause of his termination was his refusal to remain silent about illegal activities in the workplace.

*Hubrig v. Lockheed Martin Energy Systems, Inc.*, No. 03A01-9711-CV-00525 1998 WL 240128, * 11 (Tenn. App. May 4, 1998) *perm. to app. denied, concurring in results only* (Tenn. Oct. 12, 1998).

The legislature chose the language used in Tennessee Code Annotated 50-1-304 and provided a very limited exception to the common law rule governing "at will" employment. There is substantial evidence in the record at bar to establish a causal relationship between Darnall's sexually explicit comments to Ms. Rollinson and his subsequent discharge by his employer for alleged sexual harassment. The necessary "exclusive" causal relationship between the statutorily protected activities and the discharge of Darnall cannot be established, and the action of the trial court in sustaining the motion for summary judgment of A + Homecare, Inc. is affirmed.

Plaintiff further asserts that the president and sole stockholder of A + Homecare, Inc., James D. Smith, is liable under Tennessee Code Annotated section 50-1-304. Smith is not an "employer" under Tennessee Code Annotated section 50-1-304 and cannot be liable to the plaintiff under the statute. *Carr v. United Parcel Service*, 955 S.W.2d 832 (Tenn. 1997) and *Williams v. Williamson County Board of Education*, 890 S.W.2d 788, 790 (Tenn. App. 1994).

The judgment of the trial court is affirmed and costs are assessed against the Appellant.

_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


CONCURRING IN SEPARATE OPINION
WILLIAM C. KOCH, JR., JUDGE