**Olive D. GRIGGS, Plaintiff,**

v.

**COCA–COLA EMPLOYEES' CREDIT UNION, Defendant.**

No. 1:94–CV–110.

United States District Court, E.D. Tennessee.

Oct. 3, 1995.

Anita B. Hardeman, Brown, Dobson, Burnette & Kesler, Chattanooga, TN, for Olive D. Griggs.

Ronald G. Ingham, Miller & Martin, Chattanooga, TN, Ronald D. Wells, Jonathan R. Perry, Robinson, Smith & Wells, Chattanooga, TN, for Coca–Cola Employees' Credit Union.

## MEMORANDUM

COLLIER, District Judge.

■ Before the Court is the Motion for Dismissal or Summary Judgment filed by Defendant Coca–Cola Employees' Credit Union (the "Credit Union") (Court File No. 9). While styling the motion as one for either dismissal or summary judgment, in its Memorandum in support of the motion the Credit Union argues only from the summary judgment point of view (Court File No. 10). In response, Plaintiff Olive D. Griggs ("Griggs") opposes it as if it were a summary judgment motion (Court File No. 11). The Court notes that *Fed.R.Civ.P.* 12(b) requires the Court to treat a motion to dismiss under *Fed.R.Civ.P.* 12(b)(6) as a motion for summary judgment if matters outside of the pleadings are presented to and not excluded by the Court. The Court will therefore consider the motion as only one for summary judgment.

Griggs' Complaint specifically brings the action under and cites as the basis for her cause of action *Tenn.Code Ann.* § 50–1–304 (1990), commonly known as the Tennessee Public Protection Act (the "Act") (*See* Court File No. 1, pp. 1 and 7). In its summary judgment motion, the Credit Union exclusively focuses on and contends that Griggs cannot maintain a cause of action pursuant to section 50–1–304. The Act proscribes retaliatory discharge of an employee "solely for

refusing to participate in, or for refusing to remain silent about, illegal activities." *Tenn. Code Ann.* § 50–1–304(a). Griggs' Complaint does not specifically plead a common law cause of action for retaliatory discharge. In her response to the Credit Union's motion for summary judgment, though, Griggs claims that a concurrent common law cause of action for retaliatory discharge exists along with the statutory cause of action.

For the following reasons, the Court will **GRANT** the motion for summary judgment as to Griggs' cause of action under *Tenn. Code Ann.* § 50–1–304. The Court will at this time, pursuant to the terms outlined in this Memorandum, **RESERVE** ruling on whether a concurrent common law cause of action for retaliatory discharge exists in this action.

## I. PERTINENT FACTS

Griggs began working as manager for the Credit Union in 1974. She was the Credit Union's only employee and reported to its five-member board of directors. The Credit Union functioned well under Griggs' management. Moreover, the board routinely complimented and appreciated Griggs' work.

Beginning in 1992, Griggs alleges that she started to notice "irregularities" in how management ran the Credit Union (Court File No. 1, p. 3). Griggs claims many of these irregularities were illegal or otherwise counter to statutorily prescribed regulations governing credit unions (*Id.* at pp. 3–6). Several of the problems Griggs observed related to the Credit Union's recent decision to convert to an in-house computer system. Griggs alleges that she "pleaded with the board to

keep it completely legal" and that her remonstrations elicited intemperate comments from a board member (*Id.* at p. 6). By late 1992 or early 1993, Griggs believed her concerns warranted a special data processing system audit, which, upon her initiative and after her request, the Tennessee Department of Financial Institutions conducted on 26 February 1993 (*Id.*). This audit, mailed on or about 2 March 1993, criticized some of the Credit Union's practices (*See* Court File No. 11, Ex. "E").

Griggs contends that during the conversion to the in-house computer system toward the end of 1992 and immediately after the audit in February 1993 the Credit Union began to treat her differently (Court File No. 11, p. 4 and No. 1, p. 7). Griggs points to performance evaluations prior to the audit, citing her as a very good and conscientious employee (*See* Court File No. 11, Exhs. "A" and "B").[1] She apparently received a merit pay increase in 1991 (*Id.*, p. 1). Griggs also indicates that the Credit Union "ordered" her to take a two-week vacation (*Id.* at p. 4).[2] Griggs states that upon her return from the vacation she found that her office had been moved into "a concrete block building without the most basic comforts or equipment" (*Id.*).[3] Griggs also alleges that a member of the board began making suggestions about Griggs' impending retirement.

On 22 April 1993, the Credit Union discharged Griggs, purportedly based upon her failure to perform certain duties and her refusal to cooperate in the conversion to the new computer system (Court File No. 10, p. 3 and Ex. 1, pp. 1–2). Griggs contends that

---

**1.** The Court observes that an evaluation in July 1992, preceding the audit, found fault with Griggs' job performance (Court File No. 11, Ex. "C"). This written evaluation came on the heels of a conversation with Griggs, which had concerned "recent problems and complaints" directed toward her.

**2.** The Court notes that the deposition testimony cited to support this contention is as follows:

Q. "Now, when Mrs. Tubbs came and talked to you was there anything else discussed besides this matter involving the check?"
A. Yes, she said, "Joe, the board and I think you look tired and you need a vacation.

Why don't you take two weeks vacation and rest?" And I said, "I'd be delighted. I've never had two-weeks in a roll (*sic.*) since I've been here. It would be wonderful to have two weeks off." She said, "Well, fine."

**3.** The Court notes that the deposition testimony cited to support this contention *does not* literally describe the building as devoid of basic comforts and equipment. Rather, the cited testimony locates the Credit Union in relation to the main building, gives the date of the office's move as early December 1992, and offers as a reason for the move the corporate company's need for the space (*See* Court File No. 11, Griggs' Deposition, at pp. 51–2).

the Credit Union terminated her employment because she had repeatedly brought to light the Credit Union's illegal activities. She filed suit specifically under *Tenn.Code Ann.* § 50–1–304.

## II. STANDARD OF REVIEW

Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.,* 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow,* 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.,* 43 F.3d 244, 250 (6th Cir.1994). Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411.

## III. ANALYSIS

### A. Application of Tennessee law

■ The Court notes initially that this is a diversity case, requiring the application of Tennessee law. The Court will apply the law of Tennessee as interpreted by the state's highest appellate court, which in this case is the Tennessee Court of Appeals, unless the Court is convinced that the Tennessee Supreme Court would rule differently. *See Persian Galleries v. Transcontinental Ins. Co.,* 38 F.3d 253, 259 (6th Cir.1994) (citations omitted). Only two unreported Tennessee court decisions and one unreported decision from the United States Court of Appeals for the Sixth Circuit have directly addressed the issue in this case.[4]

### B. The Law of Retaliatory Discharge Applied to this Case

Specifically at issue is whether Griggs' termination violated *Tenn.Code Ann.* § 50–1–304, which, in pertinent part, reads as follows:

---

4. The decision of the Sixth Circuit in *Davis v. Sports & Recreation, Inc.,* No. 93–6132, 38 F.3d 1215, 1994 WL 589574 (table) (6th Cir. Oct. 24, 1994) (unpublished disposition) does not help the Court's analysis of this case. The *Davis* court reviews the *Merryman* decision, the only available decision at the time, and finds simply that the Act did not apply to the facts of the case before it, because the complained of activity was not illegal.

(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

(b) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect public health, safety or welfare.

(c) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

This statutory cause of action, enacted in 1990, embodies a common law cause of action previously considered by the Tennessee Supreme Court in *Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 544 (Tenn.1989) (recognizing "a cause of action for retaliatory discharge ... when an at-will employee is terminated solely for refusing to participate, or remain silent about illegal activities") and in *Chism v. Mid–South Milling Co., Inc.*, 762 S.W.2d 552, 555–57 (Tenn.1988) (recognizing the cause of action, though not on the facts of the case).

However, both cases hesitated to fully validate the cause of action. The *Watson* court expressed its reluctance "to establish public policy or adopt an exception to the common-law by placing [its] imprimatur thereon in the absence of some constitutional or legislative precedent." *Watson*, 789 S.W.2d at 544. The *Chism* court emphasized resting the cause of action upon public policy clearly "evidenced by an unambiguous constitutional, statutory or regulatory provision." *Chism*, 762 S.W.2d at 556. Public policy guidance is necessary because at the heart of the law of retaliatory discharge is the balance between the employer's undeniable right to terminate an at-will employee over management and policy decisions and the employee's right to protection from unlawful discharge. *Id.* at 555; *Watson*, 789 S.W.2d at 540; *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984).

As noted above, the Tennessee General Assembly enacted the Act in 1990, thereby satisfying the Tennessee Supreme Court's concern for clear public policy guidance. The statute's language nearly adopts verbatim the language found in the earlier cases. Recent cases specifically addressing *Tenn. Code Ann.* § 50–1–304, though, are very few in number.

When determining how to apply the statute, the court in *Merryman v. Central Parking System, Inc.*, No. 01A01–9203–CH–00076, 1992 WL 330404 (Tenn.App. Nov. 13, 1992) followed the "framework of analysis of a common law wrongful or retaliatory discharge action." 1992 WL 330404, at p. *6. The court relied on a similar analysis of a retaliatory discharge action based upon an employee's assertion of a workers' compensation claim. *See Johnson v. Saint Francis Hosp., Inc.*, 759 S.W.2d 925, 928–29 (Tenn. App.1988) (discussing the elements necessary to establish a *prima facie* case of retaliatory discharge). The Tennessee Supreme Court later essentially adopted the *Johnson* framework in *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn.1993).[5]

■ In light of this analysis, the *Merryman* court found four elements necessary for the existence of a cause of action under the Act:

(1) the plaintiff's status as an employee of the defendant;

(2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities;

(3) the employer's discharge of the employee; and

(4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

*Merryman*, 1992 WL 330404, at p. *6; *see also Leeman v. Edwards*, No. 01A01–9401–CV–00050, 1994 WL 560889, at p. *2 (Tenn. App. Oct. 14, 1994). The Credit Union does not dispute that Griggs was an employee, nor that she was discharged. The Credit Union

---

**5.** Given the similarity of the analyses, the context of retaliatory discharge, and the *Anderson* deci- sion, the Court believes the Tennessee Supreme Court would adopt the *Merryman* framework.

does contest Griggs' ability to meet the second and fourth of the *Merryman* elements (Court File No. 10, p. 5).

### 1. The second element

■ *Merryman* stated that "proper construction of the [Act] requires a situation in which an employee must either remain silent about an illegal activity or face the possibility that [she] may be discharged." *Merryman*, 1992 WL 330404, at p. *7. "[R]emoving the employee from the position of having to choose between reporting illegalities and remaining employed" is the Act's public policy objective. *Id.* "[R]emaining silent may be with an explicit or implicit condition to continued employment." *Id.* Neither party claims this case concerns Griggs' refusal of an explicit, direct request or instruction to participate in illegal activities. Nor does either party claim this case concerns her refusal of an explicit, direct request or instruction to remain silent about illegal activities. Ordinarily, under *Merryman*, the Court's review would then become whether the proof is "sufficient to show that the threat of dismissal is real, . . ., and not merely the perception of the employee." *Id.; Leeman*, 1994 WL 560889, at p. *5.

■ However, the Court understands Griggs' claim to be that her discharge resulted from her opposition, manifested both within the Credit Union to the board and outside the Credit Union to the Tennessee Department of Financial Institutions, to "irregularities" and/or illegal activities ongoing at the Credit Union. As such, Griggs did not face the choice between reporting illegalities and keeping her job. *See Merryman*, 1992 WL 330404, at p. *7; *Leeman*, 1994 WL 560889, at p. *5 (noting that the plaintiff must "fear the threat of dismissal if [she] gave information" regarding the illegal activities). These cases indicate that there must be a fear of dismissal contemporaneous with the plaintiff's decision whether to report the illegal activities.

■ Griggs offers the fact of her termination, after favorable performance evaluations only one year earlier, as clear evidence that she was discharged in violation of *Tenn. Code Ann.* § 50–1–304 (*See* Court File No. 11, p. 5).[6] The record shows the Credit Union received the audit in early March 1993, and the Credit Union discharged Griggs on 22 April 1993. While the Court does not want to establish any sort of time frame within which the termination of an employee would create any sort of presumption of a retaliatory discharge, the Court does observe that a more precipitous termination within a few days or a couple of weeks would better support a charge of retaliatory discharge than the five to six weeks lapse of time in this case. Regardless,

> [t]he Plaintiff's subsequent termination is not enough to establish an implied intention for the Plaintiff to remain silent, nor does the threat of future dismissal arise anytime an employee reports his employer's illegal activities. A mere inference that the Plaintiff was terminated because [she reported illegal activities], which arises solely from the fact of the dismissal, is not enough to make out a cause of action under [the Act].

*Leeman*, 1994 WL 560889, at p. *5.

■ Griggs also offered evidence that the Credit Union "ordered" her to take a vacation, that someone on the board mentioned her nearing retirement,[7] and that the Credit Union moved her office into a less pleasing area. Each of these allegations is minor and does not sufficiently support an implied or implicit threat of dismissal. She has not directly pointed to any contemporaneous fear or threat of dismissal which actually lead her to contemplate the choice between remaining silent, thereby keeping her job, and reporting illegalities, thereby running the risk of losing her job. In fact, by her own admission, Griggs often mentioned her concerns to the board and to an outside party (*See* Court File No. 1, pp. 6–7 and No. 11, pp. 3–4). Accordingly, the Court finds that Griggs can-

---

6. Griggs' argues that her termination took place "[w]ithin days of the board of director's receipt of the reproachful examination report" (Court File No. 11, p. 5).

7. The Court notes that during the relevant period Griggs was seventy (70) years old or older (Court File No. 11, p. 2).

not meet the second element of the *Merryman* test.

### 2. The fourth element

■ The fourth element requires Griggs to demonstrate "an exclusive causal relationship between the plaintiff's refusal to participate in or to remain silent about illegal activities and the employer's termination of the employee." *Merryman*, 1992 WL 330404, at p. *6; *Leeman*, 1994 WL 560889, at p. *2. The pertinent language of *Tenn.Code Ann.* § 50–1–304(a) (emphasis added) reads: "No employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities." Griggs invites the Court to read the statute and the language from *Merryman* as intending the employer's unlawful behavior to only have been a "substantial" factor in the discharge (Court File No. 11, pp. 10–14). The Court declines to do so.

■ The rule of statutory construction requires the Court to yield to the legislature's intention. *Business Brokerage Centre v. Dixon*, 874 S.W.2d 1, 5 (Tenn.1994); *City of Blaine v. John Coleman Hayes*, 818 S.W.2d 33, 37 (Tenn.App.1991) (citations omitted); *Lockhart v. Jackson–Madison Cty. Gnl. Hosp.*, 793 S.W.2d 943, 945 (Tenn.App.1990) (citations omitted); *see also First Am. Nat. Bank–Eastern v. F.D.I.C.*, 782 F.2d 633, 636–37 (6th Cir.1986). In order to give effect to the legislature's intent, courts look primarily to "the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language." *City of Blaine*, 818 S.W.2d at 37 (citations omitted).

Here, the language is clear. An employer may not discharge an employee "solely for refusing to participate in, or for refusing to remain silent about, illegal activities." *Tenn. Code Ann.* § 50–1–304(a). Nothing in the remainder of the section indicates the Court should read the statute differently. Nothing in *Merryman* and *Leeman*, the only two cases directly addressing the statute, indicate the Court should read the statute differently. Other statutes cited approvingly by the Tennessee Supreme Court in *Anderson* indicate that the legislature knowingly uses different language when writing laws prohibiting retaliatory discharge. *See Anderson*, 857 S.W.2d at 556; *Tenn.Code Ann.* § 22–4–108(f)(2)(A) ("Any employee who is discharged, demoted, or suspended *because* such employee has taken time off to serve on jury duty ...") (emphasis added); *Tenn.Code Ann.* § 4–21–401(a)(1) (making it unlawful to "[f]ail or refuse to hire or discharge any person or otherwise to discriminate ... *because* of such individual's race, creed, color, religion, sex, age or national origin ...") (emphasis added); *Tenn.Code Ann.* § 50–3–106(7) ("No employee shall be discharged or discriminated against *because* such employee has filed a complaint....") (emphasis added).

The Court finds similar language in *Tenn. Code Ann.* § 8–50–103(a) ("There shall be no discrimination in the hiring [or] firing ... against any applicant for employment based *solely* upon any physical, mental or visual handicap ...") (emphasis added). When interpreting this statute, the Sixth Circuit stated that the "plaintiff had to establish that she could perform her job without accommodation and the defendant terminated her *solely* because of her handicap." *Tuck v. HCA Health Services of Tennessee, Inc.*, 7 F.3d 465, 470 (6th Cir.1993) (emphasis added). In light of this interpretation of similar statutory language, the Court reads section 50–1–304 as requiring Griggs to show that the Credit Union discharged her *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities. *See Merryman*, 1992 WL 330404, at p. *6 (requiring the plaintiff to show "an exclusive causal relationship"); *Leeman;* 1994 WL 560889, at p. *2 (same); *see also Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn.1992) ("[T]he legislature is presumed to know the state of the law on the subject under consideration at the time it enacts legislation.").

■ Griggs cannot meet this standard and, thus, cannot establish the fourth *Merryman* element. The Credit Union stated as its reasons for Griggs' termination her "failure to perform her required duties at the credit union and her refusal to cooperate in the conversion of the credit union to a new computer system" (Court File No. 10, p. 3).

Evidence in the record supports those reasons. Warren Coverdale, president of the board at the Credit Union, noted in his affidavit that Griggs' job performance had become unsatisfactory in two areas: the conversion to the new computer system and the maintenance of the current ledger and financial statements (Court File No. 10, Ex. 1 at p. 1–2). Minutes from board meetings show that Griggs had failed to perform some of her duties (*Id.* at Exhs. 2 and 3). Warren Coverdale further states that the Credit Union corrected the issues addressed by the audit and is now operating within the applicable regulations (*Id.* at Ex. 1, p. 2–3).

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** the motion for summary judgment as to Griggs' cause of action brought under *Tenn.Code Ann.* § 50–1–304. However, the Court will **RESERVE** ruling on whether a concurrent common law cause of action exists in this action. Accordingly, the Court invites, but does not require, Griggs to brief the following issues:

(1) whether her original complaint pleaded a common law cause of action for retaliatory discharge;

(2) whether *Tenn.Code Ann.* § 50–1–304 is meant to supersede a pre-existing common law cause of action;

(3) whether and to what extent the Credit Union would be prejudiced by an amendment to the original complaint to include a common law cause of action

(4) whether and to what extent the statutory and the common law causes of action are different and distinct.

Griggs will have up to and including thirty (30) days from the entry of this Memorandum and its accompanying Order to file the aforementioned brief. A decision not to address the above and other issues pertinent to the common law cause of action for retaliatory discharge when an employer allegedly discharges an employee for refusing to participate in, or for refusing to remain silent about, illegal activities will effect a dismissal of this issue and this case. Should Griggs decide to address these issues, the Credit Union will then have an opportunity to file a response.