IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 9, 2000 Session

## VALERIE JEAN SPIVEY, ET AL. v. SUMNER COUNTY, TENNESSEE, ET AL.

Appeal from the Circuit Court for Sumner County
No. 18972C    Arthur E. McClellan, Judge

No.  M2000-00771-COA-R3-CV - Filed May 2, 2001

Plaintiffs in this matter have alleged that their employment was terminated in violation of Tennessee's Public Protection Act, Tennessee Code Annotated section 51-1-304.  The trial court ruled in favor of Defendants' Motion for Summary Judgment and dismissed this case in its entirety finding that all three Plaintiffs had failed to prove that their termination was based solely on "whistle blowing".  We affirm the trial court's decision in this regard.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Jaimee S. Wilson and W. Gary Blackburn, Nashville, Tennessee, for the appellants, Valerie Jean Spivey, Jeffrey Thompson and William J. Heaney.

William R. Wright and Leah May Dennen, Gallatin, Tennessee, for the appellees, Sumner County, Tennessee and Dennis Wallace.

### OPINION

This case involves the termination of three individuals.  Jeffrey Thompson and William Heaney were partners, and the same circumstances led to both dismissals.  Valerie Jean Spivey's termination occurred from separate circumstances.

Plaintiffs/Appellants, Thompson and Heaney, were employed by Defendant, Sumner County, at Sumner County Regional Medical Center as paramedics.  They alleged that they were terminated as a result of a complaint made against Defendant, Dennis Wallace.  Mr. Wallace was Director of the Emergency Medical Service in Sumner County.

Plaintiffs Thompson and Heaney alleged that they were in their ambulance making an emergency run when the dispatcher diverted them to another location. After this diversion, they received a call from Wallace who allegedly yelled at them over the radio and spoke in an extremely harsh tone. Wallace directed them to proceed back to the original emergency call. Plaintiffs felt that this was an incorrect procedure, as another ambulance had already arrived on the scene of the original emergency call and was administering emergency care. However, Plaintiffs were directed by Wallace to return to this emergency call and transport the patient to the hospital. Plaintiffs alleged that these instructions were placing the patient at risk and that the ambulance currently on the scene should have transported the patient to the hospital rather than waiting on Plaintiffs to arrive. Plaintiffs subsequently filed a complaint against Defendant Wallace regarding his actions.

Wallace testified that it was his responsibility to direct ambulance service and assure that all areas were adequately covered by ambulance service. The ambulance that was currently administering care to the patient was from a different coverage area. Wallace determined that this ambulance needed to return to its coverage area rather than transport the patient to a hospital outside of its coverage area. Wallace also testified that the patient was not critical and that this was not an emergency transport to the hospital; thus, he directed Plaintiffs to return to the original call and make the transport.

After Plaintiffs filed their complaint, Wallace and other supervisory individuals met with Plaintiffs to discuss some problems. Numerous complaints had been made against Plaintiffs by other paramedics. These complaints included not properly cleaning and stocking their ambulance at the end of their shift and smoking in non-smoking areas. At this meeting, Wallace informed Plaintiffs that their job was in jeopardy and that one more infraction would result in their termination.

Approximately three months later a female arrived at the firehouse requesting a check of her blood pressure. The reason for Plaintiffs not checking her blood pressure is in dispute, but it is undisputed that her blood pressure was checked by a fireman on the scene and not Plaintiffs. This fireman was not an EMT. It is also disputed as to why Plaintiffs did not transport this patient to the hospital. However, it is undisputed that they did not transport her to the hospital following check of her blood pressure, which was found to be high. Shortly thereafter, complaint letters were received from the female patient and from the fireman, who conducted the blood pressure check, regarding the incident.

Plaintiffs were subsequently terminated for policy violations including failure to keep their ambulance clean and failure to place a clean sheet on the ambulance cot. Wallace met them at the scene of an accident to which they had been called and inspected their ambulance. Plaintiffs had not cleaned the ambulance and were written up for proceeding to a call in a dirty ambulance with no sheet on the cot. Upon finding these violations, Plaintiffs were terminated.

Plaintiffs alleged that they were wrongfully terminated and that these trivial instances were used as a pretext for retaliatory termination due to filing the complaint against Wallace. Wallace testified to numerous prior infractions including three infractions for failure to clean and stock their

ambulance during the following year. Defendants assert that these final incidents were the last straw leading to termination.

The third plaintiff, Valerie Jean Spivey, alleged she was also terminated in retaliation for reporting an illegal event. On 8 May 1998, Spivey was at the Sumner County Regional Medical Center when two child burn victims arrived for care. While in the emergency room she allegedly overheard the doctor ask the EMT on duty what medications had been administered to the patient. The EMT on duty replied none. Thereafter, the physician "gave the EMT an angry look." Spivey believed that failure to administer medications to the burn victims was a breach of protocol on the part of the attending EMT.

Spivey then went and talked with a co-worker regarding what she had seen and heard in the emergency room and discussed with the co-worker the EMT's breach of protocol in this matter. These discussions eventually got back to Wallace, and he requested that all employees not discuss the incident, as further discussion might open the county up to liability and violate patient confidentiality. Wallace also requested that an investigation be conducted into how Spivey had conducted herself regarding this situation. There had been problems in the past with Ms. Spivey spreading gossip and not getting along with others. Ms. Spivey was terminated on 20 May 1998. On 21 May 1998 she then filed the written complaint against the EMT who allegedly breached protocol with the burn victims.

Defendants filed a Motion for Summary Judgment which was granted by the trial court. The judge found that all Plaintiffs failed to make out a prima facie case for violation of Tennessee Code Annotated section 50-1-304 in that they failed to come forward with any facts showing that their termination was based *solely* on the alleged "whistle blowing".

**Summary of the Law**

The recent case of *Darnall v. A + Home Care, Inc.*, No. 01A01-9807-CV-0034, (1999 WL 346225) (Tenn. Ct. App. June 2, 1999), is dispositive of the primary issue in this case. In deciding *Darnall*, this Court held that the four factors set forth in *Johnson v. St. Francis Hospital, Inc.*, 759 S.W.2d 925, 928 (Tenn. Ct. App. 1998), are the correct elements of a prima facie case under section 50-1-304(a) of the Code. The relevant language of this section states that "[n]o employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(a)(1999) (emphasis added).

The four elements of a cause of action under Tennessee Code Annotated section 50-1-304 are:

(1)     The plaintiff's status as an employee of the Defendant;

(2)     The plaintiff's refusal to participate in, or to remain silent about, illegal activities;

(3)     The employer's discharge of the employee; and

(4)     An exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

*Darnall*, 1999 WL 346225 at * 5.

This Court went on in *Darnall* to further explain this fourth element quoting, with approval, the language from *Griggs v. Coca-Cola Employees Credit Union*, 909 F.Supp. 1059 (E.D. Tenn. 1995).

> The fourth element requires Griggs to demonstrate "an exclusive causal relationship between the plaintiff's refusal to participate in or to remain silent about illegal activities and the employer's termination of the employee." *Merryman*, 1992 WL 330404, at p. *6; *Leeman*, 1994 WL 560889, at p. *2. The pertinent language of *Tenn. Code Ann.* § 50-1-304(a) (emphasis added) reads: "No employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities." Griggs invites the Court to read the statute and the language from *Merryman* as intending the employer's unlawful behavior to only have been a "substantial" factor in the discharge. The Court declines to do so.
>
> The rule of statutory construction requires the Court to yield to the legislature's intention. In order to give effect to the legislature's intent, courts look primarily to "the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language." *City of Blaine*, 818 S.W.2d at 37 (citations omitted).
>
> Here, the language is clear. An employer may not discharge an employee "solely for refusing to participate in, or for refusing to remain silent about, illegal activities." *Tenn. Code Ann.* § 50-1-304(a). Nothing in the remainder of the section indicates the Court should read the statute differently. Nothing in *Merryman* and *Leeman*, the only two cases directly addressing the statute, indicate the Court should read the statute differently.

*Griggs*, 909 F.Supp. at 1065 (some citations omitted); *See Darnall* at * 6.

The trial court found that there was no genuine issue of material fact with regard to element number four in all three Plaintiffs' cause of action. In determining whether or not a motion for summary judgment should be granted, "the trial court and this court must view the evidence in the light most favorable to the nonmoving party and, if any material factual dispute exists, must deny the motion." *Merryman v. Central Parking Systems, Inc.*, No. 01A01-9203-CH-00076, 1992 WL 330404, at * 3 (Tenn. Ct. App. Nov. 13, 1992).

It is well settled that the moving party for summary judgment has the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. . . .

. . .

A moving party may demonstrate an entitlement to judgment as a matter of law in several ways. First, he may affirmatively negate an essential element of the nonmoving party's claim. Second, he may conclusively establish an affirmative defense that defeats the nonmoving party's claim. The moving party may also demonstrate he is entitled to judgment as a matter of law by showing that the nonmoving party cannot establish an essential element of its case.

*Id.*

**Discussion**

We believe that the court was correct when it determined that none of the three plaintiffs were able to establish a prima facie case under section 50-1-304, as the fourth element of their cause of action is lacking any evidence, that element being that their termination from employment was due solely to the alleged "whistle blowing" activity.

In the case of Plaintiffs Thompson and Heaney, Defendants articulated a legitimate non-pretextual reason for Plaintiffs' terminations. The record shows documentation of infractions by Wallace and Heaney and testimony of their repeated inattention to job requirements. Wallace had received a complaint that these two Plaintiffs refused to treat a patient who requested having her blood pressure checked and refused to transport her to the hospital. There was also deposition testimony that the two Plaintiffs had received many complaints made in shift reports from other crew members that they were not cleaning and maintaining their ambulance properly, smoking in non-smoking areas, and not restocking their ambulance at the end of their shift. In addition, there were allegations and complaints of oversleeping and general lack of cooperation in performing their EMT duties. The two incidents that immediately proceeded their termination were documented non-pretextual policy violations made by Plaintiffs. Therefore, we find that Plaintiffs Thompson and Heaney's alleged "whistle blowing" was not the sole reason for their termination.

Likewise, in the case of Plaintiff Spivey, we find a legitimate non-pretextual reason for her termination. Plaintiff Spivey had had a long history of problems which included spreading gossip and not getting along with other employees. Spivey had been warned in the past regarding these issues and had received poor performance ratings with regard to her ability to get along with her co-workers. In Spivey's situation, she was terminated for gossiping with another co-worker, conduct about which she had been previously reprimanded and warned not to continue. Spivey made no official report of the alleged "illegal" incident until after her employment was terminated.

All three parties admit that these events other than the alleged "whistle blowing" activities occurred before they were terminated. However, the parties assert that this statute should not be read so strictly. We disagree with Plaintiffs and find that analysis of the language of the statute and

subsequent interpretive case law requires that this statute be strictly interpreted to require that, in any action for discharge or termination for "whistle blowing", the "whistle blowing" be the sole reason for the party's termination.

**Conclusion**

None of the three Plaintiffs in this case were able to establish the fourth element of a claim for violation of Tennessee's "whistle blower statute". The Plaintiffs presented no set of facts which establish an "exclusive causal relationship" between their alleged "whistle blowing" and their termination. The trial court's grant of summary judgment is affirmed. As this case was properly dismissed on summary judgment, all other issues are pretermitted.

_____
WILLIAM B. CAIN, JUDGE