IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 13, 2015 Session

## DANIEL RICHMOND v. VANGUARD HEALTHCARE SERVICES, LLC, ET AL.

**Appeal from the Circuit Court for Bedford County**
**No. 2013cv12702     Franklin L. Russell, Judge**

_____

**No. M2014-02461-COA-R3-CV – Filed January 29, 2016**
_____

J. STEVEN STAFFORD, DISSENTING.

The majority Opinion concludes that a reasonable juror (1) could not find that Mr. Richmond had reasonable cause to believe the presence of the soiled bandage was connected to "illegal activity," as required by the Tennessee Public Protection Act ("TPPA"), and (2) could not find that Mr. Richmond could demonstrate that his termination for reporting the incident violated any clear public policy under his common law claim. Because I conclude that a reasonable juror could conclude that Mr. Richmond had reasonable cause to believe that the presence of the soiled bandage stemmed from neglect of the patient, I must respectfully dissent.

To prevail under the TPPA, Tennessee Code Annotated Section 50-1-304, the plaintiff must establish:

(1) his status as an employee of the defendant employer;

(2) **his refusal to participate in, or remain silent about, "illegal activities" as defined under the Act**;

(3) his termination; and

(4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination.

Tenn. Code Ann. § 50-1-304 (emphasis added); ***Franklin v. Swift Transp. Co.***, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006). Of the four required elements, the majority Opinion concludes that element two is dispositive because the conduct alleged to be illegal in this case simply does not rise to the level of "illegal activities" as required by the statute.[1]

As discussed by the majority Opinion, "illegal activities" are defined as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. §50-1-304(a)(3). Our Supreme Court, in ***Mason v. Seaton***, 942 S.W.2d 470 (Tenn.1997), held that the TPPA's protection extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated. ***Mason***, 942 S.W.2d at 472 (citing ***Melchi v. Burns Int'l Security Servs., Inc.***, 597 F.Supp. 575, 583 (E.D. Mich. 1984)). Accordingly, Mr. Richmond must show only that he had reasonable cause to believe that illegal activities were occurring. In addition, although the case relied upon by the majority on this issue indicates that plaintiffs face a "formidable burden" in establishing this element of the claim of retaliatory discharge, *see* ***Sanders v. Henry Cnty.***, No. W2008-01832-COA-R3-CV, 2009 WL 1065916 (Tenn. Ct. App. Apr. 21, 2009),[2] the Tennessee Supreme Court has more recently held that "the burden to establish a prima facie case [under the TPPA] is **not onerous**." ***Williams v. City of Burns***, 465 S.W.3d 96, 113 (Tenn. 2015) (emphasis added) (citing ***Lin v. Metro. Gov't of Nashville & Davidson Cnty.***, No. M2008-00212-COA-R3-CV, 2008 WL 4613559, at \*5 (Tenn. Ct. App. Oct. 10, 2008)). Thus, we must be cautious not to place too high a burden on plaintiffs with regard to this element.

Here, Mr. Richmond specifically alleges that his complaint regarding the soiled bandage evidences his refusal to take part in and/or be silent about the neglect of the patient. There appears to be no dispute in this case that neglect of a patient in a health care facility is illegal under the Tennessee Adult Protection Act ("TAPA"), and therefore constitutes illegal activity for purposes of the retaliatory discharge statute. The issue in this case, instead, concerns whether Mr. Richmond's belief that neglect was occurring was reasonable under the circumstances. The TAPA defines neglect, in relevant part, as "the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult." Tenn. Code

---

[1] This dissent only addresses the issue of whether the alleged wrongful activity constitutes illegal activitiy under the statute. I express no Opinion regarding whether Plaintiff refused to participate or be silent in such activity, or whether any of the other essential elements of a statutory retaliation claim are met.

[2] The majority Opinion includes a discussion of the cases in ***Sanders*** in which a plaintiff's belief that illegal activity was occurring was determined to be unreasonable, but omits the two cases discussed in which the court determined that the plaintiffs' belief were reasonable. *See* ***Sanders***, 2009 WL 1065916, at \*8, 10 (citing ***Mason v. Seaton***, 942 S.W.2d 470, 472 (Tenn. 1997) (holding that employee was able to satisfy the "illegal activity" element of a retaliatory discharge claim where she had reasonable cause to believe that employer had violated a specific law and acted in good faith when reporting);***White v. Fort Sanders-Park W. Med. Ctr.***, No. E2006-00330-COA-R3CV, 2007 WL 241024, at \*4 (Tenn. Ct. App. Jan. 29, 2007) (same).

Ann. § 71-6-102(1)(A). In my view, this definition is quite broad and could be reasonably interpreted to include the conduct at issue in this case.

The majority Opinion concludes that "finding an old bandage on the bottom of Ms. Harris's foot" was insufficient to create a reasonable belief that Ms. Harris was the victim of neglect. To reach this conclusion, the majority relies upon the fact that "there is nothing in the statements of undisputed facts to indicate that the old bandage . . . or the same sock had been on the foot of Ms. Harris for the three weeks that had transpired since August 11." In Mr. Richmond's Statement of Undisputed Facts, however, he asserts that "Defendant did not definitively determine the cause of [the] outdated bandage's placement on the foot of Ms. []Harris on September 4, 2013." Thus, although the majority infers that Ms. Harris experienced no neglect in the weeks preceding the soiled bandage's discovery, a reasonable juror presented with the foregoing facts could infer the exact opposite: that the discovery of the bandage on Ms. Harris's foot was a sign that Defendant was not properly caring for her.

When faced with a motion for summary judgment, the court "must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999). Despite this directive, however, the majority goes on to consider, but purportedly not rely upon, the "logical and reasonable inference" that Ms. Harris was bathed properly between August 11 and September 4, but that the bandage was accidently left in the sock when the sock was removed or the "logical" inference that the bandage was "washed in Ms. Harris['s] sock and inadvertently placed back on her foot." Respectfully, it is not the purview of this Court to pass judgment upon the inferences that could be made in the moving party's favor at the summary judgment stage. *See Martin*, 271 S.W.3d at 84. Although the majority provides that it is not relying on these inferences in favor of Defendant, in my view, its conclusion ultimately depends on these inferences being drawn in the moving party's favor. Indeed, the majority concludes that Ms. Harris was properly bathed. No evidence in the record, however, directly concerns Ms. Harris's bathing and clothing schedule; accordingly, any conclusion that she was properly bathed and changed must constitute an inference in the moving party's favor. While seemingly focusing on the inferences that could be made in Defendants' favor, the majority disregards considerable evidence and inferences that can be made in Plaintiff's favor.

First, the soiled bandage was placed in a biohazard bag, indicating its potential to cause harm. Although the majority characterizes Mr. Richmond's report as an overreaction, Nurse Bayman admitted in her deposition that the soiled bandage could cause alterations, breakdowns, and discolorations on the skin. Furthermore, there is some evidence in the record to directly contradict the majority's "logical" infererence that the bandage was washed in the sock, as evidence in the record suggests that a search of Ms. Harris's room after the

incident indicated that Ms. Harris was not being provided clean socks every day.[3] Based upon this evidence a reasonable person could infer that there were other instances in which Ms. Harris was not properly washed and clothed. Common sense indicates that routine bathing and changing clothes are "necessary to maintain the health and welfare" of Ms. Harris and that the failure to perform these tasks could constitute neglect. *See* Tenn. Code Ann. § 71-6-102(1)(A). Although the majority minimizes the importance of the discovery of the soiled bandage, the facts in the record indicate that Mr. Richmond had reasonable cause to believe that the bandage could be part of a larger issue of the possible neglect of Ms. Harris.

Finally, and most importantly, the allegation of abuse and neglect did not originate with Plaintiff. Instead, it was Mr. Harris's son who first made a complaint, indicating that "[Nurse Bayman] did not act properly in the care of my mother and that my mom had been neglected pursuant to the Doctor's orders." Indeed, the record indicates that Ms. Harris's son had filed several grievances previously complaining that his mother was "wet, dirty, or had other related issues," when he arrived to visit her. Moreover, this was not the first complaint directed at Nurse Bayman's treatment of residents, as the record includes several complaints and a performance review of Nurse Bayman, citing her poor performance and unprofessional behavior. Curiously, none of the foregoing facts related to Nurse Bayman are weighed by the majority despite them likely playing a role in Mr. Richmond's decision to report.

Because of Plaintiff's role as administrator in a nursing home, Ms. Harris's son's complaint implicated Plaintiff's duty to investigate and report any reasonable allegations of abuse or neglect. *See* Tenn. Code Ann. § 71-6-103(b)(1). Indeed, in this case, the impetus to report wrongdoing is more than a mere moral imperative, it is a statutory directive. According to Tennessee Code Annotated Section 71-6-103(b)(1):

> Any person, including, but not limited to, a physician, nurse, social worker, department personnel, coroner, medical examiner, alternate care facility employee, or caretaker, having reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation, shall report or cause reports to be made in accordance with this part.

Section 71-6-105 provides that "any person making a report under this part . . . shall be presumed to be acting in good faith." However, a person who knowingly fails to make a report required by statute has committed a Class A misdemeanor. Tenn. Code Ann. § 71-6-110.

---

[3] Specifically, the record includes correspondence between Vanguard Health Care Services' corporate represetantives that states: "During the conversation possibilities of how this occurred came up and prior to the statement of negligence being made, the [Director of Nursing] and [Mr. Richmond] and [Ms. Harris's family] went to the resident[']s room and looked through dirty clothing and counted three dirty pair of socks that was in the laundry out of five days – indicated clean socks were not used for this resident at some point."

Here, the majority Opinion admits that Ms. Harris's son lodged a formal complaint about his mother's care and that he was visibly "upset and angry." Respectfully, the majority Opinion fails to consider whether a reasonable person facing the factors Mr. Richmond was forced to balance—his duty to report, possible termination, and potential criminal liability— could have "reasonable cause" to suspect illegal activity. Instead, the majority appears to conclude that when faced with this type of complaint, the only reasonable action would have been to ignore the complaint of abuse and refuse to initiate an investigation. As we opined in *Franklin v. Swift Transportation Co.*, 210 S.W.3d 521, 530 (Tenn. Ct. App. 2006):

> [T]he law of retaliatory discharge stems from Tennessee public policy that an employee should not be placed in the moral, ethical and legal dilemma of being forced to choose between reporting or participating in illegal activities and keeping his job. *See* **Henderson v. Corrs. Corp. of America**, 918 F.Supp. 204, 210 (E.D. Tenn. 1996); **Griggs v. Coca–Cola Employees' Credit Union**, 909 F.Supp. 1059, 1064 (E.D. Tenn. 1995). That does not, however, end the inquiry. Under both the Public Protection Act and the common law, the "illegal activity" or violation by the employer must implicate important public policy concerns as well.

There is no dispute that strong public policy in Tennessee supports reporting suspected cases of elder abuse and neglect. The only dispute here is whether Plaintiff's belief that elder neglect occurred was reasonable under the circumstances. Based upon the foregoing, I must respectfully disagree with the majority and conclude that a reasonable person in Plaintiff's position would have taken the same action: report the allegation of neglect and initiate an investigation to determine whether abuse actually occurred. Indeed, it appears that only because of this investigation can the majority conclude that no neglect occurred. Of course, however, Plaintiff did not have the benefit of an investigation in determining whether to initiate one. In light of the numerous inferences that may be drawn from the facts in the record, I am of the opinion that the question of reasonable cause is better reserved for the trier of fact in this case. *Johnson v. Johnson City*, 292 S.W.2d 794, 795 (Tenn. 1956) ("[I]f the minds of reasonable men may differ as to the conclusion to be drawn from the given facts, then there is presented a jury question.").

Equally important, I am concerned that plaintiffs similarly situated to Mr. Richmond will be placed in a precarious situation—that is, being faced with a statutory duty to report based on the strong policy of preventing elder abuse, and the fear of his employer terminating him. The majority's Opinion ultimately denies plaintiffs like Mr. Richmond and the elderly citizens of Tennessee protection to which they are entitled under the law. Mr. Richmond's

decision to report, in my view, was prompted by reasonable cause to believe Ms. Harris had been neglected at some point in her care.

Based on the foregoing, I would conclude that the record indicates summary judgment is not appropriate for the "illegal activity" prong of the TPPA claim and the "public policy" prong of his common law claim. Consequently, I would reverse the grant of summary judgment.

_____
J. STEVEN STAFFORD, JUDGE